09-CV-05707-CMP

FILED_____ LODGED
_____ RECEIVED
NOV 1 3 2009
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                          DEPUTY

Joseph A. Field, WSBA# 24715
Email: joe@fieldjerger.com
Field Jerger LLP
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

Attorney for Columbia Riverkeeper

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

## AT TACOMA

C09  5707 BHS

| | |
|---|---|
| **COLUMBIA RIVERKEEPER**, a Washington non-profit corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| vs. | |
| **CHINOOK VENTURES, INC.,DBA CHINOOK VENTURES LV**, a Washington corporation, | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1311 and 1342) |
| Defendant. | |

Page 1 of 23          *Columbia Riverkeeper v. Chinook Ventures, Inc.*          Field Jerger LLP
Complaint                                                                      Attorneys at Law
                                                                               621 SW Morrison, Ste. 1225
                                                                               Portland, OR 97205
                                                                               Tel: (503) 228-9115
                                                                               Fax: (503) 225-0276

## INTRODUCTION

1.      This is a civil action for declaratory and injunctive relief and the imposition of civil penalties and recovery of litigation expenses under the citizen suit provision of the Federal Water Pollution Control Act, more commonly referred to as the Clean Water Act, 33 U.S.C. § 1251 *et seq.*  Columbia Riverkeeper ("Plaintiff") brings this citizen suit under § 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), against Chinook Ventures, Inc. ("Chinook Ventures" or "Defendant") for past and continuing violations of the Clean Water Act.  Defendant is the owner and operator of the Chinook Ventures, Inc. facility located at or about 4029 Industrial Way, Longview, Washington 98632 ("the Facility").  The Facility consists of approximately 460 acres, including 100 acres of developed land containing multiple buildings, storage areas, office buildings, a wastewater treatment plant, a dock and conveyor system, and other structures.  The Facility is adjacent to the Columbia River and bordered in part by the Consolidated Diking Improvement District #1 ditches, which discharge to the Columbia River.

2.      At the Facility, Chinook Ventures both: (a) discharges pollutants in violation of National Pollution Discharge Elimination System ("NPDES") Permit No. WA000006-8, which only authorizes the Facility to discharge pollutants associated with an aluminum plant in curtailment, and (b) discharges pollutants for which it failed to obtain a NPDES permit in violation of 33 U.S.C. § 1311(a), its implementing regulations, 40 C.F.R. § 122 *et seq.*, and Washington state law, Chap. 90.48 Rev. Code of Wash. *et seq.* and Chap. 173-40 to Chap. 173-230 Wash. Admin. Code.  Defendant's CWA violations are ongoing as of the date of this Complaint.

3.      Plaintiff seeks declaratory and injunctive relief and the imposition of civil penalties resulting from these violations.  Plaintiff also seeks an award of attorney fees and costs pursuant to 33 U.S.C. § 1365(d).

//

//

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

**JURISDICTION AND VENUE**

4.      Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).  This Court has subject matter jurisdiction over the claims specified in this Complaint under 33 U.S.C. § 1365(a).  The relief requested is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).  An actual, justiciable controversy exists between Plaintiff and Defendant.  The requested relief is proper under 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

5.      Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked June 25, 2009 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as <u>Exhibit 1</u>.  The allegations in the Notice Letter are incorporated herein by this reference.  Plaintiff notified the Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on June 25, 2009.

6.      More than sixty days have passed since the Notice Letter was served, and the violations complained of in the Notice Letter are continuing.  Neither the USEPA nor Ecology has commenced and diligently prosecuted an action that would preclude this action under either 33 U.S.C. § 1365(b)(1)(B) or § 1319(g).

7.      The source of all violations complained of are located and operated within the Western District of Washington.  Venue in the Western District of Washington is therefore proper pursuant to 33 U.S.C. § 1365(c).  This case is properly filed in Tacoma, Washington pursuant to Civil Rule 5(e)(1) because Defendant resides in Cowlitz County.

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

## PARTIES

8.      Defendant Chinook Ventures, Inc. is an active corporation organized under the laws of the State of Washington.  Chinook Ventures' president and director of operations is Barry Oliver.  Chinook Ventures owns and operates the facilities at or about 4029 Industrial Way Avenue, Longview, Washington, which sits on land leased from Northwest Alloys.

9.      Plaintiff is a 501(c)(3) non-profit, tax exempt, public interest conservation organization incorporated in Washington with headquarters in Hood River, Oregon.  Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean.   Plaintiff works to accomplish its mission through diverse activities including monitoring water quality throughout the Columbia River and its tributaries, collaborating with stakeholders and government agencies to reduce toxic pollution in the Columbia River, and commenting on the activities of private parties, federal, state and local agencies.  Additionally, Plaintiff coordinates education research projects and presentations from the Columbia's headwaters to the Pacific Ocean, including near and downstream of Defendant's discharges.  Plaintiff also engages in legal actions to carry out its mission of restoring and protecting the water quality of the Columbia River and all life connected to it.

10.     Plaintiff has members, supporters, and staff that use and enjoy the Columbia River, including the area of the river that is bounded by and downstream of Defendant's discharges at the Facility.  Plaintiff's staff and members use the Columbia River for fishing, boating, bird watching, hiking, camping, and other recreational, spiritual, environmental, scientific, vocational and other such activities and interests.  The pollution associated with the Defendant's discharges has a negative impact on Plaintiff, its staff and members and their ability to enjoy those activities and interests.  Plaintiff, its staff, and members have used and enjoyed the Columbia River, including the area near and downstream of Defendant's Facility, in the past and present for  recreational, spiritual, environmental, and vocational purposes, as well as other

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

activities.  Plaintiff, its staff, and members intend to continue to use the Columbia River, including near and downstream of Defendant's Facility, in the future for recreational, spiritual, environmental, vocational purposes and other activities.  These uses include fishing, boating, swimming, kayaking, wading, and viewing the Columbia River.

11.     In addition to presenting threats to the health of aquatic species and wildlife, the pollutants discharged by Chinook Ventures lessen Plaintiff's members' aesthetic enjoyment of the Columbia River.  Plaintiff's members are reasonably concerned about the presence of pollutants in Defendant's discharges.  Plaintiff's members are reasonably concerned that Defendant's discharges presents risks to those members who use and come in contact with the water in the Columbia River and the area's fish and wildlife at, near, and downstream of Defendant's Facility.

12.     Plaintiff has standing to bring this action.  The Defendant's previous, ongoing, and future violations of the Clean Water Act have adversely impacted Riverkeeper's and its members' ability to use and enjoy the Columbia River and the Columbia River Basin, including the run of the river at, near, and downstream of Defendant's Facility, and have injured the health, recreational, environmental, aesthetic, and other interests of Columbia Riverkeeper and its members.  These are actual, concrete injuries suffered by Columbia Riverkeeper and its members and are fairly traceable to Defendant's violations and capable of redress by action of this Court.  Plaintiff has no other adequate remedy at law.

## STATUTORY BACKGROUND

13.     Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  In doing so, Congress declared a national goal of eliminating discharges of pollutants to navigable waters by 1985.

14.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the point source discharge of pollutants to navigable waters of the United States unless the discharge is in

Page 5 of 23
Complaint                    *Columbia Riverkeeper v. Chinook Ventures, Inc.*          Field Jerger LLP
                                                                          Attorneys at Law
                                                                          621 SW Morrison, Ste. 1225
                                                                          Portland, OR 97205
                                                                          Tel: (503) 228-9115
                                                                          Fax: (503) 225-0276

compliance with a NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

15.     "Navigable waters" are broadly defined as "the waters of the United States." 33 U.S.C. §§ 1362(7) & (14).

16.     The "discharge of a pollutant" means any "addition of a pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Pollutant is defined to include "industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6). The term "point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, landfill leachate collection system, vessel or other floating craft from which pollutants are or may be discharged. 33 U.S.C § 1362(7); 40 C.F.R. § 122.2.

17.     The NPDES permitting scheme is the primary means by which discharges of pollutants are controlled. NPDES permits must include conditions that will ensure compliance with the Clean Water Act. At a minimum, NPDES permits must include technology-based effluent limitations, any more stringent limitations necessary to meet water quality standards, and monitoring and reporting requirements. *See* 33 U.S.C. §§ 1342, 1311, 1318.

18.     Although USEPA is the administrator of the Clean Water Act, section 402 of the Clean Water Act, 33 U.S.C. § 1342, authorizes EPA to delegate its authority to states to implement and administer the Clean Water Act. 33 U.S.C. § 1342(b). The USEPA has delegated responsibility to administer the NPDES permit program to the State of Washington on the basis of Chapter 90.48 of the Revised Code of Washington, which defines the Ecology's authority and obligations in administering the NPDES program. Pursuant to this provision, Ecology has authority to regulate discharges of pollutants by, among other actions, issuing NPDES permits to discharge pollutants. *See* Rev. Code Wash. § 90.48.260.

Page 6 of 23
Complaint                          *Columbia Riverkeeper v. Chinook Ventures, Inc.*            Field Jerger LLP
                                                                                              Attorneys at Law
                                                                                              621 SW Morrison, Ste. 1225
                                                                                              Portland, OR 97205
                                                                                              Tel: (503) 228-9115
                                                                                              Fax: (503) 225-0276

19.     In 1987, Congress amended the Clean Water Act to address the threat of pollution carried by stormwater runoff into nearby surface waters. Section 402(p) of the CWA, 33 U.S.C. § 1342(p), establishes a framework for regulating stormwater discharges under the NPDES permitting program. Federal implementing regulations require that stormwater associated with industrial activities, which is discharged either directly or indirectly to waters of the United States, be regulated through an NPDES permit. 40 C.F.R § 122.26(a)(2).

20.     Under the regulations, a NPDES permit is required for any discharge associated with industrial activity. 40 C.F.R. § 122.26(a)(1).

21.     Stormwater discharges associated with industrial activity means the discharge from any conveyance that is used for collecting and conveying stormwater and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant. The term includes, but is not limited to, stormwater discharges from industrial plant yards; immediate access roads and rail lines used or traveled by carriers of raw materials, manufactured products, waste material, or by-products used or created by the facility; material handling sites; refuse sites; sites used for the application or disposal of process waste waters; sites used for the storage and maintenance of material handling equipment; sites used for residual treatment, storage, or disposal; shipping and receiving areas; manufacturing buildings; storage areas (including tank farms) for raw materials, and intermediate and final products; and areas where industrial activity has taken place in the past and significant materials remain and are exposed to stormwater. 40 C.F.R. § 122.26(b)(14).

22.     Dischargers can comply with the CWA and its regulations by applying for, obtaining, and complying with an individual permit, a group permit, or a general permit. 40 C.F.R. § 122.26(c)(1). Under a general permitting program, a state with delegated CWA authority adopts a general permit in the form of a regulation covering large categories of dischargers who do not generally need specialized permits.

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

23. "Any person who discharges or proposes to discharge pollutants . . . must submit a complete application" for an NPDES permit. 40 C.F.R. § 122.21. The regulations require the submission of specific types of information in order "to determine whether to issue a permit" to a facility. 40 C.F.R. § 122.26(c)(1)(v). The CWA's implementing regulations further specify that "[a]ny person proposing a new discharge, shall submit an application at least 180 days before the date on which the discharge is to commence, unless permission for a later date has been granted by the Director." 40 C.F.R. § 122.2(c) ("Time to apply."). Additionally, "[f]acilities proposing a new discharge of storm water associated with industrial activity shall submit an application 180 days before the facility commences industrial activity which may result in a discharge of storm water associated with the industrial activity." *Id.* "No discharge of pollutants into surface waters of the state is authorized until such time as a permit has been issued consistent with the terms" of Washington's CWA implementing regulations. Wash. Admin. Code § 173-220-040(7).

24. The regulations adopted by the State of Washington include procedures for issuing individual NPDES permits (Wash. Admin. Code Chap. 173-220), general permits (Wash. Admin Code Chap. 173-226), water quality criteria for surface and ground waters (Wash. Admin. Code Chap. 173-210A and Chap. 173-200), and sediment management standards (Wash. Admin. Code Chapter 173-204). These regulations require that a permit be issued before discharge of pollutants, including stormwater, to waters of the state. *See* WAC 173-220-020.

**Citizen Enforcement**

25. Clean Water Act violators are subject to enforcement activities initiated by USEPA, states, and citizens. 33 U.S.C. §§ 1319, 1365(a); 40 C.F.R. § 135. Citizens are required to provide notice of any alleged violations sixty days prior to commencing suit. 33 U.S.C. § 1365(b). After sixty days have passed, citizens may bring an action in federal district court to enforce against any ongoing violations of the Clean Water Act.

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

26.     Section 505 of the Clean Water Act authorizes citizens to bring suit against any person, including a corporation, who is alleged to be in violation of an effluent standard or limitation under the Clean Water Act.  33 U.S.C. § 1365(a).  Effluent limitation is defined broadly to include "any unlawful act under subsection (a) of [section 301] of this title."  33 U.S.C. § 1365(f).

## STATEMENT OF FACTS

27.     Defendant Chinook Ventures, Inc. owns and operates an aluminum smelter in curtailment and a private port facility, which imports, exports, and stores bulk goods.  Chinook Ventures leases the real estate that the Facility is located on from Northwest Alloys.  The Facility is located at or about 4029 Industrial Way, Longview, Washington.[1]  Chinook Ventures' operations include storage of bulk goods including, but not limited to, alumina, petroleum coke, coal, anode carbon, cement, fly ash, and furnace slag.

28.     The Facility covers approximately 416 acres and contains approximately 100 acres of developed land.  The developed portion of the Facility contains multiple buildings, outdoor and indoor storage areas, office buildings, landfills, a wastewater treatment plant, and other structures.  The site is accessible by rail car, semi-truck, and currently has one deep water dock.

29.     Defendant Chinook Ventures, Inc. is a "person" within the meaning of § 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and is subject to suit under the Clean Water Act citizen suit provision, 33 U.S.C. § 1365.

30.     The Columbia River and the waters of the Consolidated Diking Improvement District #1 ditches, which empty into the Columbia River, are waters of the United States as defined by 33 U.S.C. §§ 1311(a), 1362(7) and 40 C.F.R. § 230.3(s)(5).

---

[1]As described above, this site is referred to throughout the Complaint as "the Facility."

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

31.     The Facility includes multiple point sources within the meaning of the Clean Water Act.  33 U.S.C. § 1362(14) (defining "point source").  Chinook Ventures discharges pollutants through at least the following point source discharges: (a) Outfall 002A and Outfall 001S, which discharge pollutants directly to the Columbia River, and (b) Outfall 003, Outfall 005, and Outfall 006, which discharge to the Consolidated Diking Improvement District #1 ditches and then to the Columbia River.

32.     Chinook Ventures discharges pollutants through point sources to waters of the United States without a NPDES permit in violation of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342.

33.  Chinook Ventures also discharges pollutants through point sources to waters of the United States in violation of the terms of NPDES Permit No. WA000006-8 and sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342.

**Chinook Ventures' NPDES Permits**

34.     Chinook Venture's currently has two NPDES permits: (a) NPDES Permit No. WAR011205 and (b) NPDES Permit No. WA 000008-6.

35.     NPDES Permit No. WAR011205 is a general construction stormwater permit. Chinook Ventures applied for this construction stormwater permit on April 15, 2009.  Ecology issued Permit No. WAR011205 for stormwater discharges from construction grade and fill activities on 14.7 acres of the Facility known as the "Flat Storage Area."  The permit application estimated the project start-up date at May 1, 2009 and the completion date as July 30, 2009.

36.     Unlike NPDES Permit No. WAR011205, NPDES Permit No. WA 000008-6 is an individual NPDES permit.  Ecology issued NPDES Permit No. WA 000008-6 to the Longview Aluminum Company ("Longview Aluminum"), the former operator of an aluminum plant at 4029 Industrial Way, Longview, Washington.   Chinook Ventures purchased the Facility on or about December 1, 2004.  On May 10, 2005, Longview Aluminum and Chinook Ventures

Page 10 of 23
Complaint

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

1    submitted a Transfer of Permit Form to Ecology to transfer NPDES Permit No. WA 000008-6

2    from Longview Aluminum to Chinook Ventures.

3     37. Ecology issued Permit No. WA 000008-6 to Longview Aluminum, formerly

4    known as Reynolds Aluminum, for discharges of pollutants associated with an aluminum

5    smelter.   Ecology issued the permit on October 15, 1990 and the permit expired on October 15,

6    1995.  Ex. 2 (NPDES Permit No. WA 000008-6).  In a letter dated August 20, 1996, Ecology

7    informed Longview Aluminum that it would administratively extend the permit's terms until

8    further notice.   On February 1, 2002, Ecology modified the permit per Longview Aluminum's

9    September 2001 request to reduce monitoring requirements during Longview Aluminum's

10   temporary curtailment.   The Permit was modified again on June 26, 2003 per Longview

11   Aluminum's April 30, 2003 request because the plant shut down aluminum production

12    38. NPDES Permit No. WA 000008-6 categorizes Longview Aluminum's industry

13   type as "Primary Aluminum Smelting."   Longview Aluminum owned and operated an

14   aluminum smelting operation at the Facility from the early 1940s until approximately February

15   14, 2001 when operations were curtailed.   After approximately February 14, 2001, Reynolds

16   Aluminum managed the site as an aluminum plant in curtailment.   The permit includes

17   technology based and water quality based effluent limitations for pollutants associated with

18   primary aluminum smelting.  These pollutants include, but are not limited to: fluoride, cyanide,

19   total suspended solids, aluminum, antimony, and nickel.

20   **Chinook Ventures' Bulk Storage and Transport Operations at the Facility**

21    39. Since at least early 2006, Chinook Ventures has operated and continues to operate

22   a bulk storage and transport business at the Facility.   Plaintiff's Notice Letter, Exhibit 1,

23   describes these operations in detail.

24    40. The Facility receives, stores, and/or recovers at least the following materials in

25   approximately the following amounts: Alumina (450,000 tons); Anthracite Coal (100,000 tons);

26   Bath/Electrolyte (2,500 tons); Carbon-crushed anode (10,000 tons); Cryolite plant residue (0

Page 11 of 23
Complaint

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

tons, however, the Facility stores 1,084,000 tons on site daily); ESP Underflow Solids Liquor Ditch Waste (130 tons); Fly Ash (20,000 tons); Petroleum Coke (80,000 tons); Portland Cement (70,000 tons), and SPL K088 (>3,000 tons in three years). Chinook Ventures stores bulk storage goods both inside and outside.

41.     On information and belief, when it rains, stormwater flows over and runs off of the bulk storage materials or materials in transport at the Facility. Effluent that comes into contact with bulk goods stored and transported at the facility contains pollutants. For example, effluent from petroleum coke piles contains barium, magnesium, selenium, anthracene, benz(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, benzo(g,h,i)perylene, chrysene, dibenz(a,h)anthracene, fluoranthene, indeno(1,2,3-cd)pyrene, naphthalene, phenanthrene, pyrene and other pollutants. Effluent from coal piles contains aluminum, arsenic, barium, chromium, iron, lead, magnesium, manganese, selenium, and other pollutants.

42.     On information and belief, process wastewater and stormwater runs over the surface of the Chinook Ventures' Facility, into stormwater catch basins, through pipes, and in to the Columbia River or Consolidated Diking Improvement District #1 ditches.

43.     To date, Chinook Ventures has not obtained a renewed, modified or new NPDES permit for pollutants associated with and discharged by its bulk storage and transport operations at the Facility.

44.     Ecology has conducted inspections several times since Chinook Ventures purchased the Facility. Ecology conducted an unannounced inspection on April 5, 2006 to examine the cause of increased quantities of pollutants in Chinook Ventures' wastewater discharges. These discharges are reported to Ecology in Discharge Monitoring Reports ("DMRs") required by Permit No. WA000006-8. During an April 5, 2006, Ecology noted, among other things, petroleum coke near a process waste drain and a conveyor system leaking petroleum coke.

Page 12 of 23
Complaint                          *Columbia Riverkeeper v. Chinook Ventures, Inc.*          Field Jerger LLP
                                                                                            Attorneys at Law
                                                                                            621 SW Morrison, Ste. 1225
                                                                                            Portland, OR 97205
                                                                                            Tel: (503) 228-9115
                                                                                            Fax: (503) 225-0276

45.     Ecology conducted two inspections in 2007: on April 11, 2007 and October 17, 2007.    A March 25, 2008 Inspection Report summarized the findings of both inspections. Ecology's Inspection Report described a new operation taking place at the Facility.  The report concluded that Chinook Ventures, "currently operates a flat storage and transport Facility that receives fly ash, petroleum coke, coke, alumina, and cement by ship and rail and transports the materials off-site by rail and truck."

46.     On March 9, 2009, Ecology issued an administrative order and notice of penalty for various air and water quality violations by Chinook Ventures.  Ecology, however, did not order Chinook Ventures' to cease its bulk storage and transport operations until such time as Chinook Ventures obtained a NPDES permit, as required by law.

47.     July 1, 2009, Chinook Venture submitted to Ecology an application for an individual NPDES permit for its bulk storage and transport operations at the Facility, but at this time, however, Chinook Ventures does not have a permit to discharge pollutants associated with its bulk storage, import, and export operation.

48.     To date, Ecology has not made a determination on whether Chinook Ventures' NPDES permit application is complete under 40 C.F.R. § 122.2(e) and Wash. Admin. Code § 173-220-0440.  In turn, Ecology has not: (a) developed a NPDES permit that prohibits or limits the quantity of pollutants discharged by Chinook Ventures' bulk storage and transport operations; (b) released a draft NPDES permit for public comment or hearings; or (c) issued Chinook Ventures a NPDES permit for its bulk storage and transport operations.

**Chinook Venture's Violations of NPDES Permit No. WA000006-8**

49.     Chinook Ventures has violated and continues to violate various conditions of NPDES Permit No.WA000006-8 as explained below and described in the Notice Letter, Exhibit 1, which is hereby incorporated by reference.

50.     Defendant has violated and continues to violate Permit No. WA000006-8 and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

without a permit and by violating the terms of Permit No. WA000006-8. The detailed specifics of each violation are set forth in the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference.

51.    Defendant has violated and continues to violate Permit No. WA000006-8 and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the monitoring, reporting, recordkeeping, notice, management requirements and other requirements of the NPDES permit.

52.    Permit Condition S4.E requires that "[t]he Permittee shall handle and dispose of all solid waste material in a manner to prevent its entry into the state ground or surface waters." Additionally, Condition S4.E. states that "[t]he Permittee shall not allow leachate from its solid waste material to enter state ground or surface waters without providing all known, available, and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or surface waters."

53.    Permit Condition S.4.E. requires that "[t]he Permittee shall handle and dispose of all solid waste material in a manner to prevent its entry into the state ground or surface waters." Condition S.4.E. also states that "[t]he Permittee shall not allow leachate from its solid waste material to enter state ground or surface waters without providing all known, available, and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or surface waters." Chinook Ventures' has failed and continues to fail to operate its import, export, and bulk storage operation in a manner that prevents the entry of solid waste and leachate into the state ground and surface waters. *See* Ex. 1, 5-8 (describing Chinook Ventures handling of solid waste and its entry into the Columbia River). These violations began on the date that Chinook Ventures began importing materials to and handling materials at the Facility and discharging the materials in stormwater and through process wastewaster. These violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

present wherein Chinook Venture failed to comply with condition S.4.E. and handle waste in a manner to prevent its entry into the Columbia River.  These violations are ongoing.

54.   Chinook Ventures' operations fail to prevent leachate from solid waste material from entering the Columbia River without providing all known, available, and reasonable treatment in accordance with Condition S.4.E.2.  Chinook Ventures' has stored materials, including petroleum coke, spent potliner, and other materials, outside and, through stormwater and process wastewater, discharged leachate into the Columbia River without applying all known, available, and reasonable treatment.  For example: (a) cement cleaned from the north storage silo is placed, without cover, on the ground outside the silo; (b) Building 51 is designed in such a way that materials stored in the building may be blown or dragged out of the building and into both a storm or process drain near the building's exit ramp or out of the facility and either ponded or washed away by rain; (c) crushed anodes are stored outside and near a storm drain; (d) Ecology inspectors observed fly ash spilling from windows, dragged out of buildings by vehicles, and washed into a storm drain; (e) Chinook Ventures' dock contains drainage holes which allow fluids and solids on the dock to discharge directly into the Columbia River.  *See* Ex. 1 at 5-8.

55.   Permit Condition G.1 requires Chinook Ventures operation be consistent with the terms and conditions of the NPDES permit.

56.   Permit Condition G.2 requires Chinook Ventures to at all times operate and maintain all systems of collection and control used to control pollution discharge.  Permit Condition G.12 and 40 C.F.R. 122.41(e) impose specific requirements for operation and maintenance.

57.   Condition G.12. and 40 CFR 122.41(a), "Duty to Comply," require Chinook Ventures to comply with the permit.  40 CFR 122.41(a) states, in part: "The permittee must comply with all conditions of this permit.  Any Permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action."   The "Duty to Comply," 40 CFR

Page 15 of 23
Complaint

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

122.41(a)(1) also requires that Chinook Ventures "comply with effluent standards or prohibitions established under section 307(a) of the Clean Water Act for toxic pollutants . . . even if the permit has not been modified to incorporate the requirement."

58.  As discussed above and in the Notice Letter, <u>Exhibit 1</u>, Chinook Ventures began operating an import, export, and bulk storage facility in early 2006.  Chinook Ventures' operation commenced and continued absent compliance with Condition G.12. and 40 CFR 122.41(a).  These violations began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility.  These violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Ventures failed to comply with condition G.12. and 40 CFR 122.41(a).

59.  Permit Condition G.12. and 40 CFR 122.41(d), "Duty to Mitigate," requires that Chinook Ventures "take all reasonable steps to minimize or prevent any discharge or sludge use or disposal in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment."

60.  <u>Exhibit 1</u>, incorporated herein by reference, describes Chinook Ventures' chronic failure to "take all reasonable steps to minimize or prevent any discharge or sludge use or disposal in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment."  Violations of Permit Condition G.12. and 40 CFR 122.41(d) began on at least the date that Chinook Ventures began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the Facility.  Based on information available to Columbia Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.12. and 40 CFR 122.41(a).  These violations are ongoing.

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

61.    Permit Condition S.1., "Effluent Limitations and Monitoring Requirements," requires Chinook Venture to monitor for specific pollutant parameters at specific times. Chinook Venture has violated and continues to violate Condition S.1. by failing to submit complete monthly discharge monitoring reports ("DMR") within 15 days of the end of the month monitored for at least the following the following parameters:

| Date(s) | Parameter | Outfall |
|---------|-----------|---------|
| February 2007 | Oil & Gas | 002B |
| February 2007 | Total Suspended Solids | 002B |
| February 2007 | Fluoride | 002B |
| February 2007 | CN | 002B |
| February 2007 | Aluminum | 002B |
| February 2007 | Sb | 002B |
| February 2007 | Nickel | 002B |
| February 2007 | B(a)P | 002B |
| March 2007 | Oil & Gas | 002A |
| March 2007 | Aluminum | 002A |
| March 2007 | Sb | 002A |
| March 2007 | Nickel | 002A |
| March 2007 | B(a)P | 002B |
| March 2007 | CN | 002B |
| March 2007 | Fluoride | 002B |
| June 2007 | Fluoride | 003C |
| July 2007 | Aluminum | 002A |
| July 2007 | Sb | 002A |

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

| | | |
|---|---|---|
| July 2007 | Nickel | 002A |
| August 2007 | Aluminum | 002A |
| August 2007 | Sb | 002A |
| August 2007 | Nickel | 002A |
| November 2007 | Oil & Gas | 002A |
| January 2008 | Oil & Gas | 003C |
| January 2008 | CN | 003C |
| January2008 | Fluoride | 003C |

62.     NPDES Permit No. WA 000008-6 requires Chinook Ventures to monitor various pollutants from the 001S outfall point. The parameters consist of: 30-day and 7-day biochemical oxygen demand every two months, 30-day and 7-day total suspended solids twice a month, residual chlorine weekly, fecal coliform every two months, pH effluent and influent once per week, and flow continuously. Chinook Ventures has continued to violate Permit No. WA 000008-6 by failing to adequately report the mandatory monitoring requirements for the above mentioned parameters.

63.     Permit Condition G.12 and 40 CFR 122.41(j), "Monitoring and records," requires that Chinook Ventures take representative samples of the monitored activity and report specific information. *See* 40 CFR 122.41(j)(1) and 40 CFR 122.41(j)(3). This includes: (1) the date, exact place, and time of sampling; (2) the individual(s) who performed the sampling or measurements; (3) the date(s) analyses were performed; (4) the individuals who performed the analyses; (5) the analytical techniques or methods used; and (6) the results of such analyses.

64.     Chinook Ventures violated and continues to violate condition G.12 and 40 CFR 122.41(j) on each and every date Chinook Ventures failed to report DMR data, as required by the permit, and every subsequent day that Chinook Ventures failed to correct this reporting error.

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

*See* Complaint at ¶ 61 (detailing Chinook Ventures' failure to report in accordance with condition G.12 and 40 CFR 122.41(j)).

65. Defendant has benefited economically as a consequence of its failure to obtain an NPDES permit for its new industrial activities and failure to comply with NPDES Permit No. WA000006-8. Defendant has avoided the costs associated with obtaining and implementing an NPDES permit. These costs include, but are not limited to, hiring additional personnel required to implement and monitor the NPDES permit, fees associated with additional monitoring requirements required by a NPDES permit, implementing Best Management Practices to comply with a NPDES permit, purchasing and maintaining technology to comply with the NPDES permit, and altering business practices to control the sources of pollution restricted by a NPDES permit.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Discharges of Pollutants in Violation of Terms of NPDES Permit**

**(Violations of 33 U.S.C. Sections 1311(a) and 1342(a))**

66. The preceding paragraphs and the allegations in the Notice Letter, <u>Exhibit 1</u>, are incorporated herein.

67. Defendant's violations of NPDES Permit No. WA000006-8 described herein and in the Notice Letter, <u>Exhibit 1</u>, constitute violations of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as that term is used in section 505 of the CWA, 33 U.S.C. § 1365.

68. Chinook Ventures' discharges have violated and continue (or are reasonably likely to continue) to violate the Permit No. WA000006-8, which is an NPDES permit issued under section 402 of the Clean Water Act, 33 U.S.C. § 1342, subjecting Chinook Ventures to civil penalties up to $32,500 per day per violation on or before January 12, 2009 and up to $37,500 per day per violation after January 12, 2009 under Section 309(d) of the Clean Water

Page 19 of 23
Complaint

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

1  Act, 33 U.S.C. § 1319(d).

2      69.    Chinook Ventures' discharges violate terms of the NPDES Permit No. WA

3  000008-6, the CWA and are ongoing.  Due to the persistent nature of the violations, there is

4  more than a reasonable likelihood of ongoing violations in the future.  In light of the history of

5  violations and the nature of these violations, Chinook Ventures will violate these requirements in

6  the future unless and until Chinook Ventures is enjoined from doing so by this Court.

7      70.    Plaintiff seeks injunctive relief pursuant to Section 505(a) of the CWA, 33 U.S.C.

8  § 1365(a).  Continuing commission of the alleged acts above will irreparably harm Plaintiff and

9  the citizens of Washington, for which harm these is no plain, speedy or adequate remedy at law.

10      71.    On information and belief, the violations committed by Defendant are ongoing or

11  are reasonably likely to continue to occur.  Any and all additional violations of the CWA which

12  occur after those described in Plaintiff's Notice Letter but before a final decision in this action

13  should be considered continuing violations subject to this Complaint.

14      72.    Without the imposition of appropriate civil penalties and the issuance of an

15  injunction, Defendant is likely to continue to violate the CWA to the further injury of the

16  Plaintiff, its member(s), and others.

17  **SECOND CLAIM FOR RELIEF**

18  **Discharges of Pollutants to Navigable Waters without a Permit**

19  **(Violations of 33 U.S.C. Sections 1311(a) and 1342(a))**

20      73.    The preceding paragraphs and the allegations in the Notice Letter, Exhibit 1, are

21  incorporated herein.

22      74.    Defendant's discharge of pollutants without a NPDES permit, described herein

23  and in the Notice Letter, constitute violations of sections 301 and 402 of the CWA, 33 U.S.C. §§

24  1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as that term is used in

25  section 505 of the CWA, 33 U.S.C. § 1365.

26      75.    On information and belief, the violations committed by Defendant are ongoing or

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

are reasonably likely to continue to occur. Any and all additional violations of the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

76. Chinook Ventures' discharge of pollutants without an NPDES permit subjects Chinook Ventures to civil penalties of up to $32,500 per day per violation on or before January 12, 2009, and up to $37,500 per day per violation after January 12, 2009 under Section 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365(a). In addition, the award of litigation costs and attorneys fees are sought pursuant to Section 505(d) of the CWA, 33 U.S.C. § 1365(d).

77. These illegal discharges violate the CWA and are ongoing. Due to the persistent nature of the violations, there is more than a reasonable likelihood of ongoing violations in the future. In light of the history of violations and the nature of these violations, Chinook Ventures will violate the CWA in the future unless and until Chinook Ventures is enjoined from doing so by this Court.

78. Plaintiff seeks injunctive relief pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Continuing commission of the alleged acts above will irreparably harm Plaintiff and the citizens of Washington, for which harm this is no plain, speedy or adequate remedy at law.

79. Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the CWA to the further injury of the Plaintiff, its member(s), and others.

80. A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A. Issue a declaratory judgment that Defendant has violated and continues to be in violation of Permit No. WA000006-8 and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

and 1342;

B.      Issue a declaratory judgment that Defendant has violated and continues to be in violation Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342 because Defendant failed to obtain an NPDES permit for its bulk storage and transport operations;

C.      Enjoin Defendant from operating the Facility in a manner that results in further violations of Permit No. WA000006-8 and the CWA;

D.      Enjoin Defendant from conducting the bulk storage and transport operations until such time as Defendant obtains an NPDES permit for these operations;

E.      Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for three years after Defendant achieves compliance with all of the conditions of Permit No. WA000006-8, with copies of all reports and other documents which Defendant submits to the USEPA or to Ecology regarding Defendant's coverage under the Permit, or new or modified NPDES permit issued by Ecology, at the time it is submitted to these authorities;

F.      Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

G.      Retain jurisdiction over this matter until such time as Defendant has come into compliance with the prohibitions, terms, and conditions of its permit and the CWA;

H.      Enter a money judgment imposing maximum civil penalties against Defendant for its violations of the CWA in the amount of $32,500 per violation per day for violations on or before January 12, 2009, and $37, 500 per day per violation for violations after January 12, 2009 pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d), and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. Part 19;

I.      Issue an order awarding Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

J.     Award such other relief as this Court deems appropriate.

DATED this 16th day of November, 2009.

Respectfully submitted,

FIELD JERGER LLP

Joseph A. Field, WSBA 24705
Email: joe@fieldjerger.com
Field Jerger LLP
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228 – 9115
Fax: (503) 225 – 0276

Attorney for Columbia Riverkeeper

*Columbia Riverkeeper v. Chinook Ventures, Inc.*

Field Jerger LLP
Attorneys at Law
621 SW Morrison, Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

# Exhibit 1



**COLUMBIA**

**RIVERKEEPER®**

**FILE COPY**

Columbia Riverkeeper
724 Oak Street
Hood River, OR 97031
Phone: (541) 387-3030
www.columbiariverkeeper.org

June 25, 2009

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Managing Agent
Chinook Venture, Inc. /dba/ Chinook Venture
LV
4029 Industrial Way
Longview, WA 98632

Managing Agent
Northwest Alloys
201 Isabella St.
Pittsburgh, PA 12512-5858

Barry Oliver
Director of Operations
Chinook Venture, Inc.
4029 Industrial Way
Longview, WA 98632

Mark Stiffler
Northwest Alloys
c/o Alcoa Inc.
201 Isabella St.
Pittsburgh, PA 15212-5858

Mark Rohwedder
Facilities Manager
Chinook Venture, Inc.
4029 Industrial Way
Longview, WA 98632

Mark Stiffler
President, Northwest Alloys
1560 A Marble Valley Rd.
Addly, WA 99101

**Re:     NOTICE OF INTENT TO SUE CHINOOK VENTURE, INC. UNDER THE
            CLEAN WATER ACT.**

Dear Sirs and Managing Agents:

I write on behalf of and represent Columbia Riverkeeper ("Riverkeeper") to provide you
with sixty days notice of Columbia Riverkeeper's intent to file a citizen suit against Chinook
Venture, Inc. /dba/ Chinook Venture LLC ("Chinook Venture") and Northwest Alloys, Inc.
("Northwest Alloys") (collectively "Chinook Venture") under Section 505 of the Clean Water
Act ("CWA"), 33 U.S.C. § 1365, for ongoing violations as described below.  Riverkeeper
intends to file suit for violations of the federal Clean Water Act (CWA) that have resulted from
illegal discharges into the Columbia River from the Chinook Venture facility ("facility") located
on the shore of the Columbia River at 4029 Industrial Way Avenue, Longview, Washington,

which is approximately three miles west of downtown Longview, Washington.[1] Any response to this notice should be directed to the undersigned at the address in the letterhead above.

Riverkeeper intends to file suit against Chinook Venture for multiple, ongoing violations of the federal Clean Water Act. In particular, Riverkeeper intends to file suit against Chinook Venture for discharging pollutants into the Columbia River in violation of CWA § 301(a) without a valid National Pollutant Discharge Elimination System (NPDES) (CWA § 402) permit or a valid CWA § 404 permit. *See* 33 U.S.C. § 1342 (National Pollutant Discharge Elimination System); 33 U.S.C § 1344 (Permits for dredged and fill material). CWA § 301(a) prohibits the discharge of any pollutant into the navigable waters of the United States without a permit.

Riverkeeper also intends to file suit under the alternative theory that Chinook Venture has violated and continues to violate the requirements and limitations contained in the NPDES permit No. WA-000008-6 issued by the Washington Department of Ecology ("Ecology") to the Longview Aluminum Company. On May 4, 2005, Chinook submitted a "Transfer of Permit to a New Owner/Operator" for NPDES Permit No. WA-000008-6 ("Permit"). The violations caused by Chinook Venture's actions and operations violate Section 301(a) of the federal Clean Water Act, which prohibits discharges in violation of applicable permit limits. 33 U.S.C. § 1311(a). Finally, Riverkeeper intends to file suit against Chinook Venture for violating the terms of Ecology's March 9, 2009 Administrative Order No. 6422 ("2009 Order"). The 2009 Order required that Chinook Venture submit a Stormwater Pollution Prevention Plan (SWPPP) by April 15, 2009. To date, Chinook Venture has failed to submit the required SWPPP and is violating the 2009 Order. These violations are ongoing.

Documents contained in the Chinook Venture facility file at Ecology's Lacey, Washington office demonstrate that Chinook Venture has violated and continues to violate the CWA. Riverkeeper therefore intends to file suit to challenge Chinook Venture's ongoing violations, as described below.

## I.    COLUMBIA RIVERKEEPER'S COMMITMENT TO IMPROVING WATER QUALITY IN THE COLUMBIA RIVER BASIN.

Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. Riverkeeper is a membership-based, non-profit organization with members who live, recreate, and work throughout the Columbia River basin, including near and downstream of Chinook Venture's facility.

Threats facing the Columbia River are severe by any measure. *See Columbia River Basin State of River Report for Toxics*, Environmental Protection Agency, Region 10 (January 2009), available online at: http://yosemite.epa.gov/r10/ecocomm.nsf/Columbia/SoRR/ (summarizing toxic threats and impacts of water pollution in the Columbia River basin). To address the

---

[1]Chinook Venture is located three miles downstream from the Lewis and Clark Bridge at River Mile 63. Latitude 46N, 08', 05", Longitude 123W, 00', 10".

leading causes of water quality impairment, Riverkeeper invests significant time and resources in reducing pollutant loads from industrial, municipal, and construction sources.[2]  The vast majority of rivers and lakes in Washington fail to meet basic state water quality standards for pollutants such as toxics and temperature.  *See* State of Washington 303(d) List, available online at: http://www.ecy.wa.gov/programs/wq/303d/index.html.  Both stormwater pollution and process wastewater contribute significant quantities of toxic pollutants to the Columbia River.  For example, when rain sends runoff across industrial facilities, the water picks up contaminants that are drained into the Columbia River and its tributaries.  These toxics accumulate in local fish, wildlife, and birds.

When fish and shellfish are caught, the toxics are transferred to someone's dinner plate.  Simply put, wastewater and stormwater pollution are public health issues with particular impacts on low income residents that regularly use the Columbia and other local waterbodies as a food source for their families.  Riverkeeper is committed to improving water quality through various program areas including public education, volunteer water quality monitoring, advocating for strong water protection laws, and pollution permit enforcement.

This notice of intent to sue Chinook Venture is part of Riverkeeper's effort to improve water quality in the Columbia River for purposes including swimming, habitat quality, and subsistence, recreational, and commercial fishing.  In particular, Riverkeeper is sending this notice of intent to sue because Chinook Venture's illegal and ongoing discharge of pollutants, including toxic pollutants, into the Columbia River directly controverts Riverkeeper's mission of improving and protecting water quality.  As discussed below at length, Chinook Venture's failure to comply with the Clean Water Act degrades the Columbia River's water quality and places the health and well-being of all who use the Columbia at or downstream of Chinook Venture's facility at risk.

## II.    HISTORY OF CHINOOK VENTURE SITE AND WATER QUALITY PERMITTING.

### A.  Longview Aluminum Company.

Longview Aluminum Company, formerly known as Reynolds Aluminum, operated an aluminum smelting operation at the Chinook Venture facility site since the early 1940s.  The Longview Aluminum Company operation shut down on February 14, 2001.  Longview used 876 pots to produce molten aluminum.  The pots included a steel shell, electrical bus bar conductor, and an anode/ore storage superstructure.  Each pot also contained a carbon-based liner.  After removal from the pot, this potliner, known at spent potliner (SPL), is categorized as a dangerous

---

[2]According to the National Research Council, "[s]tormwater runoff from the built environment remains one of the great challenges of water pollution control, as this source of contamination is a *principal contributor* to water quality impairment of waterbodies nationwide."  *Urban Stormwater Management in the United States*, National Research Council (Oct. 15, 2008), available online at: http://www.epa.gov/npdes/pubs/nrc_stormwaterreport.pdf (emphasis added).

waste and is subject to the State Dangerous Waste Regulation.  Ecology Inspections Report, Mar. 25 2008 1–2 [hereinafter Ecology Inspection Report].[3]

**B.    Longview Aluminum NPDES Permit No. WA 000008-6 and Chinook Venture.**

Chinook Venture purchased the former Longview Aluminum facility in December 2004. *See* Ecology Administrative Order No. 6422 at 3 (March 9, 2009).  Longview Aluminum worked under NPDES Permit No. WA 000008-6 for their aluminum reduction plant.  Longview Aluminum's permit expired on October 15, 1995.  Ecology Inspection Report at 2.  Columbia Riverkeeper's file review uncovered a letter dated August 20, 1996.  The letter stated that Ecology would not review the NPDES Permit No. WA 000008-6 renewal application at that time due to Ecology's permit workload.  The letter further stated that Ecology maintained the Permit and its terms until further notice, citing RCW 34.05.422(3)(4) and 40 CFR 122.4(d).[4]  Ecology's Inspection Report states:

> Ecology did not renew Longview's permit because the plant shut down their aluminum production operations on February 14, 2001.  Ecology modified the Longview Aluminum Company's NPDES permit on June 26, 2003 per Longview's request (letter dates April 30, 2003) to reduce monitoring frequencies during temporary curtailment.

> Initially, Chinook [Venture] did not know how they were going to develop the site.  Chinook's NPDES permit is administered by the Industrial Section in the Washington State Department of Ecology's Solid Waste and Financial Assistance Program (Industrial Section).  The Industrial Section made a written request as well as a number of verbal requests that Chinook submit an NPDES renewal application for the new activities that are currently conducted on site and for activities that are proposed to be conducted on the Chinook site.

Ecology Inspection Report at 2.  To date, Chinook Venture has neither applied for nor obtained an NPDES permit for its industrial activities at the facility, which includes operating a flat storage and transport facility that receives fly ash, petroleum coke, coke alumina, cement or other material, which are clearly substantially different that the activities conducted historically by Longview Aluminum under its former permit.[5]

---

[3]The March 2008 Inspection Report includes Ecology's findings from the April 11, 2007, and October 17, 2007 site inspections.  Ecology conducted water quality related inspections at Chinook Venture's facility on at least the following dates: March 1, 2005, April 5, 2006, April 11, 2007, and October 17, 2007.

[4]The August 20, 1996 Ecology letter was not cited in the Ecology Inspection Report.  Rather, Ecology's Inspection Report states that Longview Aluminum submitted a permit renewal application per Ecology's request in either late 1999 or early 2000 and an updated renewal application on June 29, 2000.  *See* Ecology Inspection Report at 2.

[5]Chinook Venture submitted a "Notice of Intent (NOI) Application Form for a Construction Stormwater General Permit" to Ecology on April 15, 2009.  The NOI covers the facility's Flat

## III.  DISCHARGE OF POLLUTANTS OTHER THAN THOSE EXPRESSLY AUTHORIZED BY NPDES PERMIT No. WA-000008-6.

Clean Water Act Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into the waters of the United States without a permit.  Specifically, CWA § 301(a) states: "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful."  The CWA broadly defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge . . . radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into the water." 33 U.S.C. § 1362(6).  The term "discharge of any pollutant" means "any addition of any pollutant to navigable waters from any point source." *Id.* at § 1362(12).  The term "point source" means "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel conduit, well, discrete fissure, container, rolling stock . . . or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* at § 1362(14).  Absent a permit, a facility may not discharge pollutants into waters of the United States.

### A. Chinook Venture's Discharge of Pollutants to the Columbia River and Longview Ditch System without an NPDES Permit.

#### i.  Unpermitted discharges from Shipping Operations and conveyor system on the Columbia River.

Chinook Venture has violated and continues to violate CWA § 301(a) by failing to obtain an NPDES permit for its ship loading, ship off-loading, ground transport, and dock operations.  Chinook Venture discharges pollutants directly into the Columbia River via its conveyor belt systems, through process wastewater, and in stormwater.  Specifically, Chinook Venture operates a ship loading and off-loading dock located on the Columbia River.  The dock receives fly ash, petroleum coke, coke, alumina, and cement from water going vessels.[6]  Ecology Inspection Report at 1.  Ecology's Inspection Report states:

---

Storage Area.  According to the Public Notice, "The proposed project is located at 4029 Industrial Way in Longview, Cowlitz County.  This project involves 14.7 acres of soil disturbance for construction grade and fill activities.  Stormwater will be treated and discharged to the Columbia River."  Ecology issued Chinook Venture Permit No. WAR011205 for these construction activities.  According to the NOI, the estimated project start date was May 1, 2009 and the estimated project completion date is July 30, 2009.  Chinook Venture NOI at 2 (Apr. 15, 2009).

[6] Once materials are loaded or off-loaded from a vessel, they are transported to land via a conveyor system. Ecology Report at 4.  The first conveyor runs along the side of the unloading dock.  *See* Ecology Report, Inspection Photos (Photo 1 and accompanying text).  The second conveyor runs along the side of the access road that runs between land and the unloading dock.  Ecology Report at 4.  The access road is constructed of wooden planks, with slits between each plank.  The road is supported by a substructure of joists running perpendicular to the planks. *Id.*

Chinook has been conducting new activities on the site that are not included in Chinook's NPDES permit.[7]   Ecology observed increased TSS [Total Suspended Solids], Al [Aluminum], and F [Fluorine] pollutant concentrations at Outfall 002A as reported in Chinook's DMRs [Discharge Monitoring Reports] in early 2006. Ecology conducted an unannounced inspection on April 5, 2006.

Ecology Inspection Report at 3. Ecology's Inspection Report goes on to state that, "[d]uring the April 5, 2006 inspection Ecology observed an accumulation of petroleum coke around what appeared to be a process water drain. The source of the petroleum coke observed around the process drain appeared to be a leak of fugitive petroleum coke from the petroleum coke conveyor located high above the drain." *Id.* at 4.   In addition, Ecology observed petroleum coke on the pavement outside of at least one of the buildings and "expressed our concern about the impact of petroleum coke on Chinook's process water and stormwater that could be one of the sources of the increased contaminant concentrations at Outfall 002A." *Id.*

The dock contains drainage holes which allow fluids and solids on the dock to discharge directly into the Columbia River. *Id.* at 4.   The dock contains two-lying guard rails which contain open spaces at ground level creating a clear path from the ground to the water below. *See* Ecology Inspection Report, Inspection Photos, 8 (Photo 13). Tires connected to the dock act as guard rails between docked ships and the dock itself. *See id.* at 5 (Photo 7).

Materials are unloaded from ships using a vacuum. *Id.* Chinook Venture states that any cement spilled on the pier during the unloading of or transport process is recovered using a vacuum system. Ecology Inspection Report at 5.   However, Ecology records note the presence of water and air hoses on the dock. *See* Ecology Inspection Report and Photos.   Evidence contained in Ecology's files suggests that Chinook Venture unlawfully used water hoses to wash pollutant laden water into storm and process water drains.   Upon information and belief, Riverkeeper provides notice that Chinook Venture unlawfully discharged process wastewater into the Columbia River and Longview Ditch System since at least April 11, 2007.   If Riverkeeper learns, through discovery or other means, that Chinook Venture began discharging process wastewater and stormwater from these activities prior to April 11, 2007, Riverkeeper will seek to enforce against these additional violations.

---

at 4–5. The second conveyor transports materials unloaded from vessels to a transfer tower on land. *Id.* at 4.

[7]By Chinook's own calculations, the facility receives or recovers the following materials in the following amounts: Alumina (450,000 tons); Anthracite Coal (100,000 tons); Bath/Electrolyte (2,500 tons), Carbon-crushed anode (10,000 tons); Cryolite plant residue (0 tons, however, the facility stores 1,084,000 tons on site daily); ESP Underflow Solids Liquor Ditch Waste (130 tons); Fly Ash (20,000 tons); Petroleum Coke (80,000 tons); Portland Cement (70,000 tons), and SPL K088 (>3,000 tons in three years). Notice of Intent: Application Form. Chinook Ventures, Inc, Storm Water Pollution Prevention Plan, Appendix C. Worksheet 2. Apr. 15, 2009.

Ecology describes Chinook Venture's conveyor systems' condition as "in a state of disrepair." Ecology Inspection Report at 6. The facility's conveyor systems allow "material to spill out of a number of locations along the length of the conveyor." *Id.* Chinook Venture discharges to the Columbia River during the loading and off-loading process based on: (a) the slits between boards on the access road, (b) the drainage system on the dock, and (c) the minimal barrier between the dock and the water below. Furthermore, material falls from the conveyor enter the Columbia River through wind or water transport.

Chinook Ventures has violated and continues to violate CWA § 301(a) by discharging, without a permit, contaminated stormwater and process wastewater associated with these operations and stored materials, including the discharge of fly ash, petroleum coke, coke, alumina, and cement. This stormwater and wastewater is discharged to the Columbia River or other surface waters adjacent to the facility. Discharges from coke piles contain barium, magnesium, selenium, anthracene, benz(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, benzo(g,h,i)perylene, chrysene, dibenz(a,h)anthracene, fluoranthene, indeno(1,2,3-cd)pyrene, naphthalene, phenanthrene, pyrene, and other pollutants. Effluent from coal piles contains aluminum, arsenic, barium, chromium, iron, lead, magnesium, manganese, selenium, and other pollutants.

### ii. Unpermitted Discharge from Storage Activities.

Chinook Venture's has violated and continues to violate CWA § 301(a) by discharging pollutants without an NPDES permit from its indoor and outdoor storage and bulk transfer operations. This includes discharges of process wastewater and stormwater. For example, the Chinook Venture transfer tower receives material from the second conveyor and transports the material into one of two silos located on either side of the tower. *Id.* at 5; *see also* Ecology Report, Inspection Photos 8 (photo 14).

Chinook's process for preparing the two silos adjacent to the transfer tower for new materials exposes pollutant laden materials to stormwater. As reported in the Ecology Inspection Report, cement cleaned from the north storage silo was placed, without cover, on the ground outside the silo. *Id.* at 5. *See also* Ecology Inspection Report, Inspection Photos 9–10 (photos 15–18). There are no controls in place to prevent stormwater from washing away materials when they are piled in this manner. *Id.* at 10 (notes accompanying photo 18). These violations are ongoing and occurred during each day of operation in which there was more than a trace amount of precipitation.

Chinook also utilizes various buildings on the site to store and load materials for transport. Again, Chinook Venture failed to obtain a NPDES permit for the indoor and outdoor storage and on-site transport of materials including fly ash, petroleum coke, coke, alumina, and cement. These activities and the stormwater and process water discharges associated with these activities are not permitted. Examples of Chinook Venture's unpermitted activities that cause or contribute to discharges of pollutants include, but are not limited to:

*Building 51*: Decontamination had been conducted pursuant to Ecology Order No. 2038 DW05. Various materials have been stored in Building 51 since the decontamination took place, including alumina ore and furnace slag.  Ecology Inspection Report 8–9.  Building 51 is designed in such a way that materials stored in the building may be blown or dragged out of the building and into both a storm or process drain near the building's exit ramp or out of the facility and either ponded or washed away by rain. *Id.* at 9.

*Building 52*: Building 52 is used to store crushed anodes.  The Ecology Inspection Report noted an accumulation of crushed anodes outside of Building 52 near a storm drain.  Ecology Inspection Report, Inspection Photos 22 (accompanying text to Photo 42).

*Building 53*:  Various materials have been stored in Building 53 including crushed anodes, coal, and petroleum coke.  Ecology Inspection Report 9–10.  Materials that leak have accumulated in close proximity to a storm drain and during a rain event appears to form standing water over a storm drain. *Id.* at 9.

*Building 54*: Building 54 has stored coal. *Id.* at 10

*Building 55*: Building 55 has stored fly ash and coal.  Ecology inspectors observed fly ash spilling from windows, dragged out of the building by vehicles, and washed into a storm drain.

*Building 56*: Building 56 has stored petroleum coke which has readily escaped from the building through the movement of trucks. *Id.* at 11.

*Building K*: Building K has housed anode blocks. *Id.* at 11.

*Building L*:  Building L has housed anode blocks. *Id.*

*Building 37*:  Building 37 has stored oft-specification cement.  Dust is capable of flying out of the structure. *See id.*

Additionally, uncrushed anodes are still present at the facility.  During inspections, Ecology discovered that anode structures were stored in a "central courtyard" with only marginal plastic covering. *See* Ecology Inspection Report, Inspection Photos 12–14 (photos 22–25).  Uncovered anodes were also left outside without any cover. *Id.* at 14 (photo 26).  Therefore, Chinook also discharges contaminated stormwater from these anodes.

**B.    Chinook Venture's Activities and Operations Violate Clean Water Act § 301(a).**

Chinook Venture failed to prepare, submit, and obtain an NPDES permit before beginning operations of "a flat storage and transport facility that receives fly ash, petroleum coke, coke, alumina, and cement by ship and rail and transports the materials off-site by rail and truck." Ecology Inspection Report at 1.

At present, Chinook Venture has an NPDES Permit, Permit No. WA-000008-6, but this permit does not cover Chinook's current industrial activity. As noted above, Chinook obtained Permit No. WA-000008-6 by submitting an "Transfer of Permit to New Owner/Operator" for the Longview Permit to the Department of Ecology on May 4, 2005. This permit is for the aluminum reduction plant. Importantly, Ecology issued Permit No. WA-000008-6 for a specific industrial activity: an aluminum plant in curtailment. Before curtailment, the 1990 Permit Fact Sheet describes the industrial activities addressed in the permit. These include "primary aluminum smelting, [a] carbon paste plant, cryolite recovery, and casting operations." Subsequent permit modifications address an aluminum plant in curtailment.

Notably, Permit No. WA-000008-6 does not address or cover "a flat storage and transport facility that receives fly ash, petroleum coke, coke, alumina, and cement by ship and rail and transports the materials off-site by rail and truck." Ecology Inspection Report at 1. Moreover, Chinook Venture lacks an NPDES permit for indoor or outdoor storage of fly ash, petroleum coke, coke, alumina, cement, or any other material the facility has or may transport or store. Similarly, Chinook Venture lacks any NPDES permit for discharging fly ash, petroleum coke, coke, alumina, and cement into the Columbia River via slots in ship off-loading conveyor belts, or discharging stormwater contaminated with these and other pollutants.

Chinook Venture's discharges of process wastewater and stormwater are not authorized by Longview Aluminum Company's NPDES Permit No. WA-000008-6.[8] Therefore, each day of discharge of non-permitted process wastewater, stormwater, and materials carried or transported on the conveyor belts and discharged into the Columbia River constitutes a distinct violation of Section 301(a) of the CWA. 33 U.S.C. § 1311(a). Chinook Venture's flat storage and transport activities began on the first day that the facility received or delivered materials, such as fly ash, petroleum coke, coal, alumina, cement, and other materials, from any ship, train, or truck. Chinook Venture's violations continued each and every day the facility loaded or off-loaded these materials from ships, trains, or trucks and stored the materials on site. These violations are ongoing.

Chinook Venture is in the best position to know the exact date that it first received materials, but Ecology noted that the storage of petroleum coke likely began in "early 2006." *See* Ecology Inspection Report at 3. At the very latest, Chinook Venture began discharging pollutants without a permit on the date of Ecology's 2006 inspection: April 5, 2006. Therefore, Chinook Venture violated the Clean Water Act by discharging pollutants without a permit beginning on April 5, 2006 and continuing each every day from April 5, 2006 to the present.

---

[8]Chinook Venture is in the best position to know the date on which they began unpermitted operations including importing and exporting materials such as petroleum coke, cement, coal, fly ash and alumina. Additionally, Chinook Venture is in the best position to know the dates of activities associated these operations that are not permitted under Permit No. WA-000008-6. If Riverkeeper learns, through discovery or other means, that Chinook Venture began discharge process wastewater and stormwater from these activities prior to January 1, 2006, Riverkeeper will seek to enforce against these additional violations.

Chinook Venture's discharge of pollutants includes process wastewater and stormwater. Chinook Venture's discharge of pollutants via stormwater occurred each and every time that there was/is more than a trace amount of precipitation that causes/caused a stormwater discharge from Chinook Venture's facilities. Riverkeeper is including a Table of precipitation levels in Longview, Washington. *See* Attachment A (Table of Precipitation in Longview, Washington from May 2004 to April 29, 2009). Although precipitation data is only available through April 29, 2009, Riverkeeper alleges that Chinook Venture violated the Clean Water Act each and every time that there was/is more than a trace amount of precipitation that causes/caused a stormwater discharge from Chinook Venture's facilities, including dates after April 29, 2009 for which stormwater data is not yet available.

## IV.   DISCHARGE OF POLLUTANTS IN VIOLATION OF PERMIT LIMITATIONS IN NPDES PERMIT NO. WA-000008-6 AND FEDERAL LAW.

Riverkeeper also intends to file suit under the alternative theory that Chinook Venture has violated and continues to violate the requirements contained in the National Pollutant Discharge Elimination System (NPDES) permit No. WA-000008-6 issued by the Washington Department of Ecology ("Ecology") to the Longview Aluminum Company.   These violations are ongoing.

### A. Violations of NPDES Permit No. WA-000008-6 Effluent Limitations for Chlorine.

Condition S1.C contains the effluent limits and monitoring requirements for Outfall 001. Chinook Ventures has violated the chlorine effluent limit for chlorine, as described in Table 1.

**Table 1: Chlorine Permit Violations.**

| Outfall | Discharge Monitoring Report Dates | Effluent Limit for Chlorine | Discharge Monitoring Report Measurements for Chlorine |
|---|---|---|---|
| 001 (to the Columbia River) | July 2006 | 0.1 to 1.0 mg/L | 0.03 mg/L |
| 001 (to the Columbia River) | October 2006 | 0.1 to 1.0 mg/L | 1.08 mg/L |
| 001 (to the Columbia River) | March 2007 | 0.1 to 1.0 mg/L | 0.0 mg/L |

### B. Violations of NPDES Permit No. WA-000008-6 Special Conditions.

#### i. Failure to Properly Operate and Maintain Flow Measures Device.

Permit Condition S.2.G., "Flow Measurement," requires that flow measurement devices be "installed, calibrated, and maintained to insure that accuracy of the measurements are

consistent with the accepted capability of that type of device." From at least September 1, 2007 to the present, Chinook failed to properly operate and maintain the flow measurement devise at Outfall 002A, which discharges to the Columbia River.

### ii. Failure to Update Spill Control Plan.

Under Permit Condition S.4.A., Chinook Venture must annually update the existing Spill Control Plan, subject to Departmental approval, "for the prevention, containment, and control of spills or unplanned discharges. . . ." Based on the an extensive review of Ecology's Chinook Venture files, Chinook Venture has neither annually submitted nor annually received Ecology's approval for an updated Spill Control Plan to prevent spills into the Columbia River.

### iii. Failure to Operate the Treatment System According to the Operating Plan.

Condition S.4.D. provides that "[w]astewater treatment systems shall be operated according to the procedures and criteria described in an approved operating plan." Based on Ecology's Inspection Report and Ecology's 2008 Notice of Violation No. 5551 ("Notice of Violation"), Chinook Venture is violating this condition by failing to operate the wastewater treatment system according to the procedures and criteria described in the approved operating plan. This violation occurred, and continues to occur, on each and every date since at least July 17, 2006.

### iv. Failure to Update Chinook's Treatment System Operating Plan for New Stormwater Discharges.

Condition S.4.D. states that Chinook Venture "shall update" the existing Treatment System Operating Plan and submit the plan to Ecology for review and approval within six months of written notification from Ecology. According to Ecology's 2008 Notice of Violation, Chinook Venture failed to update the treatment system operating plan to address new materials brought to the site including: bath, petroleum coke, coal, fly ash, cement, and alumina. These violations began on the date that Chinook Venture began importing and handling these materials to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 wherein Chinook Venture failed to comply with condition S.4.D. and update its Treatment System Operating Plan. These violations are ongoing.

### v. Failure to Handle Waste in a Manner to Prevent its Entry into the Columbia River.

Permit Condition S.4.E. requires that "[t]he Permittee shall handle and dispose of all solid waste material in a manner to prevent its entry into the state ground or surface waters." Additionally, Condition S.4.E. states that "[t]he Permittee shall not allow leachate from its solid waste material to enter state ground or surface waters without providing all known, available, and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or

surface waters." As discussed at length in Section III., Chinook Venture has and continues to violate Condition S.4.E. These violations began on the date that Chinook Venture began importing and handling these materials to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition S.4.E. and handle waste in a manner to prevent its entry into the Columbia River. These violations are ongoing.

### vi. Failure to Prevent Leachate from Solid Waste Material from Causing an Adverse Effect on State Surface Waters.

Condition S.4.E.2. states: "The Permittee shall not allow leachate from its solid waste material to enter state ground or surface waters without providing all known, available, and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or surface waters." Chinook Venture's operations, described at length in Section III., fail to prevent leachate from solid waste material from entering the Columbia River without providing all known, available, and reasonable treatment in accordance with Condition S.4.E.2. These violations began on at least the date that Chinook Venture began importing and handling materials include, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition S.4.E.2. These violations are ongoing.

### C. Violations of NPDES Permit No. WA-000008-6 General Conditions.

#### i. Failure to Discharge and Conduct Activities Consistent with Permit Terms.

Permit Condition G.1., "Discharge Violations," states: "All discharge and activities authorized by this permit shall be consistent with the terms and conditions of this permit. The discharge of any pollutant more frequently than, or at concentrations in excess of, that authorized by this permit shall constitute a violation of the terms and conditions of this permit." Chinook Venture's operations, described at length in Section III., are not consistent with the terms and conditions of the Permit. Thus Chinook Venture has violated and continues to violate Condition G.1. These violations began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.1. These violations are ongoing.

#### ii. Failure to Properly Operate and Maintain all Facilities.

Permit Condition G.2., "Proper Operation and Maintenance," provides: "The Permittee shall at all times properly operate and maintain all facilities and systems of collection and control (and related appurtenances) which are installed or used by the Permittee for pollution control."

Additionally, Permit Condition G.12. and 40 CFR 122.41 (e) impose specific requirements for proper operation and maintenance. Chinook Venture's operation and poor maintenance, described at length in Section III., violate Permit Condition G.2, G.12, and 40 CFR 122.41(e). Chinook Venture has violated and continues to violate Condition G.2, G.12, and 40 CFR 122.41(e). These violations began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.2, G.12, and 40 CFR 122.41. These violations are ongoing.

### iii. Failure to Notify Ecology of Permit Violations.

Permit Condition G.4., "Noncompliance Notification," requires that Chinook Venture provide Ecology with specific information at specific times in the event Chinook Venture "does not comply with, or will be unable to comply with, any of the discharge limitations or other conditions specified in the permit." If Chinook Venture fails to comply with the permit, Condition G.4. requires that the facility provide Ecology with: (a) "[a] description of the nature and cause of the noncompliance, including the quantity and quality of any unauthorized waste discharges; (b) [t]he period of noncompliance, including the exact dates and times and/or the anticipated time when the Permittee will return to compliance; and (c) [t]he steps taken, or to be taken, to reduce, eliminate, and prevent recurrence of the noncompliance." Condition G.4. also requires Chinook Venture to "take immediate action to stop, contain, and clean up any unauthorized discharges and take all reasonable steps to minimize adverse impacts to waters of the state and correct the problem."

In the event of a toxic discharge, specific requirements attach. Condition G.4. provides, in part: "In the case of any discharge subject to any applicable toxic pollutant effluent standard under Section 307(a) of the Clean Water Act, or which could constitute a threat to human health, welfare, or the environment, 40 CFR Part 122 requires that the information specified in items G4.a., G4.b., G4.c, above, shall be provided not later than 24 hours from the time the Permittee becomes aware of the circumstances."

To date, Chinook Venture has violated and continues to violate Condition G.4. The facility has failed, and continues to fail, to follow the procedures of Condition G.4. and inform Ecology of repeated failures to comply with the permit. These violations began on at least the date that Chinook Venture began importing and handling materials include, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.4. These violations are ongoing.

iv.   **Failure to Submit a New Permit Application for New Industrial Activities being Conducted at Chinook Venture Facility.**

Permit Condition G.7., "Permit Modifications," states:

> The Permittee shall submit a new application or supplement to the previous application where facility expansions, production increases, or process modifications will 1) result in new or substantially increased discharges of pollutants or a change in the nature of the discharge of pollutants, or 2) violates the terms of the conditions of the permit.

To date, Chinook Venture has violated and continues to violate Condition G.4. The facility has failed, and continues to fail, to follow the procedures of Condition G.7. As discussed above, Chinook Venture began operating transport and storage facility in early 2006. Chinook Venture's operation commenced and continued without submitting a new application or supplementing the previous application. These violations began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.7. These violations are ongoing.

v.   **Failure to Notify Ecology of the New Industrial Activities being Conducted at the Chinook Venture facility.**

Permit Condition G.9., "Reporting a Cause for Permit Modification," provides, in part:

> A Permittee who knows or has reason to believe that any activity has occurred or will occur which would constitute cause for modification or revocation and reissuance under G8. or 40 CFR Part 122.62 must report such plans, or such information, to the Department [of Ecology] so that a decision can be made on whether action to modify or revoke and reissue a permit will be required.

Chinook Venture has violated and continues to violate Condition G.9. As described in Section III., Chinook Venture knew or had reason to believe that its transport and storage activities constituted cause for modification, revocation, or resissuance. For example, Ecology notified Chinook Venture on multiple occasions that its new facility operation required and new NPDES permit. Thus, Ecology requested that Chinook Venture submit an NPDES permit application. Nonetheless, Chinook Venture ignored Ecology's directives and, instead, continued to operate without reporting "such plans, or such information, to the Department [of Ecology] so that a decision [could] be made on whether action to modify or revoke and reissue a permit will be required."

As discussed above, Chinook Venture began operating transport and storage facility in early 2006. Chinook Venture's operation commenced and continued absent compliance with

Condition G.9.   These violations began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility.  Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.7.  These violations are ongoing.

### vi.     Failing to Comply with Permit Conditions.

Condition G.12. and 40 CFR 122.41(a) require Chinook Venture to comply with the Permit.  Specifically, 40 CFR 122.41(a) states, in part: "The permittee must comply with all conditions of this permit.  Any Permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action."   The Duty to Comply, 40 CFR 122.41(a)(1) also requires that Chinook Venture "comply with effluent standards or prohibitions established under section 307(a) of the Clean Water Act for toxic pollutants . . . even if the permit has not been modified to incorporate the requirement."

As discussed above, Chinook Venture began operating transport and storage facility in early 2006.  Chinook Venture's operation commenced and continued absent compliance with Condition G.12. and 40 CFR 122.41(a).   These violations began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility.  Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.12. and 40 CFR 122.41(a).  These violations are ongoing.

### vii.    Failure to Mitigate.

Permit Condition G.12. and 40 CFR 122.41(d), "Duty to Mitigate," requires that Chinook Venture "take all reasonable steps to minimize or prevent any discharge or sludge use or disposal in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment."

Ecology's Inspection Report, Ecology's Chinook Venture facility file, proof available to Riverkeeper, and Section III. of this Notice of Intent to Sue describe Chinook Venture's chronic failure to "take all reasonable steps to minimize or prevent any discharge or sludge use or disposal in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment."  Violations of Permit Condition G.12. and 40 CFR 122.41(d) began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility.  Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.12. and 40 CFR 122.41(a).  These violations are ongoing.

## V.  MONITORING & REPORTING VIOLATIONS.

### A.  Failure to Monitor.

Permit Condition S.1., "Effluent Limitations and Monitoring Requirements," requires Chinook Venture to monitor for specific pollutant parameters at specific times.  Chinook Venture has violated and continues to violate Condition S.1. by failing to submit complete monthly discharge monitoring reports (DMR) within 15 days of the end of the month monitored for at least the following the following parameters:

**Table 2.**

| Date(s) | Parameter | Outfall |
|---|---|---|
| February 2007 | Oil & Gas | 002B |
| February 2007 | Total Suspended Solids | 002B |
| February 2007 | Fluoride | 002B |
| February 2007 | CN | 002B |
| February 2007 | Aluminum | 002B |
| February 2007 | Sb | 002B |
| February 2007 | Nickel | 002B |
| February 2007 | B(a)P | 002B |
| March 2007 | Oil & Gas | 002A |
| March 2007 | Aluminum | 002A |
| March 2007 | Sb | 002A |
| March 2007 | Nickel | 002A |
| March 2007 | B(a)P | 002B |
| March 2007 | CN | 002B |
| March 2007 | Fluoride | 002B |
| June 2007 | Fluoride | 003C |
| July 2007 | Aluminum | 002A |
| July 2007 | Sb | 002A |
| July 2007 | Nickel | 002A |
| August 2007 | Aluminum | 002A |
| August 2007 | Sb | 002A |
| August 2007 | Nickel | 002A |
| November 2007 | Oil & Gas | 002A |
| January 2008 | Oil & Gas | 003C |
| January 2008 | CN | 003C |
| January2008 | Fluoride | 003C |

NPDES Permit No. WA 000008-6 requires Chinook Venture to monitor various effluents from the 001S outfall point.  The parameters consist of: 30-day and 7-day biochemical oxygen demand every two months, 30-day and 7-day total suspended solids twice a month, residual chlorine weekly, fecal coliform every two months, pH effluent and influent once per week, and flow continuously.  Chinook Venture has continued to violate Permit No. WA 000008-6 by

failing to adequately report the mandatory monitoring requirements for the above mentioned parameters. Attachment B, which contains Table 3, states Chinook Venture's reporting violations for Outfall 001 (also known as Outfall 001S) for each parameter that Chinook Venture must monitor and report. Attachment B includes violations from December 2005 through May 2009. These violations are ongoing.

### B. Failure to Report.

Permit Condition G.12 and 40 CFR 122.41(j), "Monitoring and records," requires that Chinook Venture take representative of the monitored activity and report specific information. *See* 40 CFR 122.41(j)(1) and 40 CFR 122.41(j)(3). This includes: (1) the date, exact place, and time of sampling; (2) the individual(s) who performed the sampling or measurements; (3) the date(s) analyses were performed; (4) the individuals who performed the analyses; (5) the analytical techniques or methods used; and (6) the results of such analyses.

Chinook Venture violated and continues to violate condition G.12 and 40 CFR 122.41(j) on each and every date Chinook Venture failed to report DMR data, as required by the permit, and every subsequent day that Chinook Venture failed to correct this reporting error. *See* Tables 2 and 3 (detailing Chinook Venture's failure to report in accordance with condition G.12 and 40 CFR 122.41(j)).

### C. Failure to Report Planned Changes & Anticipated Noncompliance.

Permit Condition G.12. and 40 CFR 122.142(i), "Reporting requirements," imposes specific requirements for Chinook Venture to notify Ecology. In particular, 40 CFR 122.142(i) states:

> The permittee shall give notice to the Director as soon as possible of any planned physical alterations or additions to the permitted facility. Notice is required only when:
>
> > (i) The alteration or addition to a permitted facility may meet one of the criteria for determining whether a facility is a new source in § 122.29(b); or
> > (ii) The alteration or addition could significantly change the nature or increase th quantity of pollutants discharged. . . . [and]
> > (iii) The alteration or addition results in significant change in the permittee's sludge use or disposal practices, and such alteration, addition, or change may justify the application of permit conditions that are different from or absent in the existing permit, including notification of additional use or disposal sites not reported during the permit application process or not reported pursuant to an approved land application plan.

Permit Condition G.12. and 40 CFR 122.41(l)(2) also require that Chinook Venture "give advance notice to the Director of any planned changes in the permitted facility or activity which may result in noncompliance with permit requirements.

Chinook Venture has violated and continues to violate G.12., CFR 122.142(i), and 40 CFR 122.41(I)(2). Riverkeeper's Notice of Intent to Sue, Section III.A., describes in detail changes in the facility and activities that may result in noncompliance with the Permit requirements. Additionally, Section XX describes the activities that could and did significantly change or increase the quantity and nature of pollutants discharged by Chinook Venture. Violations of Permit Condition G.12, 40 CFR 122.142(i), and 40 CFR 122.41(I)(2) began on at least the date that Chinook Venture began importing and handling materials including, but not limited to, bath, petroleum coke, coal, fly ash, cement, and alumina to the facility. Based on information available to Riverkeeper, these violations began on, at least, April 5, 2006 and continued each and every day after April 5, 2006 to the present wherein Chinook Venture failed to comply with condition G.12, 40 CFR 122.142(i), and 40 CFR 122.41(I)(2. These violations are ongoing.

### D. Failure to Sign Monthly DMRs.

Permit Condition G.12., 40 CFR 122.41(k), "Signatory Requirement," and 40 CFR 122.22(b) require that an authorized official at Chinook Venture sign all monthly DMRs. *See* 40 CFR 122.41(k). From at least June 2007 to February 2008, Chinook Venture violated G.12. and 40 CFR 122.22(b) by failing to sign monthly DMRs.

## VI.    VIOLATING WATER QUALITY STANDARDS.

Chinook Venture's discharge of process wastewater and stormwater into the Columbia River causes or contributes to a violation of Washington's water quality standards each time that the discharge contains pollutant concentrations in excess of the numeric water quality criterion established by the state of Washington. *See* 40 CFR 122.44; see also Attachment D.

## VII.    VIOLATING CLEAN WATER ACT § 301(a), 33 U.S.C. § 1311(a), and § 404, 33 U.S.C. § 1343.

Under Clean Water Act § 404, 33 U.S.C. § 1343, the CWA allows certain discharges of "dredged or fill material into the navigable waters [of the United States]" only if a person: (1) obtains a permit, and (2) follows the conditions of that permit. Chinook Venture has violated and continues to violate CWA § 404 by failing to obtain a permit to: (1) drive vertical metal poles into the Columbia River to support the facility's petroleum coke loading system, and (2) discharge fill material, in the form of cement from off-loading ships, into the Columbia River.

### A. Constructing Petroleum Coke Loading System in Columbia River without a CWA § 404 Permit.

Chinook Venture drove vertical metal poles into the Columbia River to support the facility's petroleum coke loading system. *See* Attachment C (Photos of vertical metal poles taken from a boat in the Columbia River on March 3, 2009 by Robert Rodin). On information and belief, Riverkeeper alleges that Chinook Venture placed the metal poles or pilings into the

Columbia River on or before December 1, 2008 without a permit under CWA § 404. Chinook Venture's violation of CWA § 404 is ongoing: (1) the vertical poles remain fixed in bed of the Columbia River, and (2) Chinook Venture never obtained a CWA § 404 permit from the U.S. Army Corps of Engineers to drive or keep the poles into the River. Specifically, Chinook Venture has violated CWA § 301(a) and § 404 each and every day after December 1, 2008. This violation is ongoing.

### B. Discharging Fill Materials from Dock into the Columbia River.

Chinook Ventures has, and continues to, discharge fill materials into the Columbia River, including cement and other materials transported on the conveyor belt and on the dock. *See* Section III.A.i. (describing materials discharged into Columbia River while being transported on conveyor belt(s) and discharged into river from the dock). These discharges constitute "fill" under 40 CFR 232.2. *See* 40 CFR 232.2 (fill material "means any "pollutant" which replaces portions of the "waters of the United States" with dry land or which changes the bottom elevation of a water body for any purpose."). Chinook Venture did not obtain a CWA § 404 permit to discharge fill into the Columbia River. Chinook Venture has violated CWA § 301(a) and § 404 since at least April 5, 2006 and continues to violate CWA § 301(a) and § 404 each and every day thereafter. This violation is ongoing.

## VIII.   VIOLATING ADMINSTRATIVE ORDER NO. 64222.

Pursuant to 33 U.S.C. § 1365(a)(1)(B), Riverkeeper intends to file suit against Chinook Venture for violating the terms of Ecology's March 9, 2009 Administrative Order No. 6422 ("2009 Order"). The 2009 Order required that Chinook Venture submit a Stormwater Pollution Prevention Plan (SWPPP) by April 15, 2009. To date, Chinook Venture is violating the Order by failing to submit the required SWPPP. This violation began April 16, 2009, and has continued each day thereafter to the present, and includes every day after this notice when Chinook Venture fails to comply with the Order's terms.

## IX.   CONTACT INFORMATION

The full name, address, and telephone number of the party providing this notice is:

Columbia Riverkeeper
724 Oak Street
Hood River, OR 97031
(541) 387-3030

The attorneys representing Columbia Riverkeeper in this matter are:

Lauren Goldberg
Columbia Riverkeeper, Staff Attorney
(licensed in Oregon)
724 Oak Street

Hood River, OR 97031
(541) 387-3030

Field Jerger LLP
610 SW Alder, Suite 910
Portland, Oregon 97205
(503) 542-2015

## X.    CONCLUSION

The above-described violations are based upon information currently available to Columbia Riverkeeper. Each of the violations is ongoing. Chinook Venture has consistently violated and it continues to violate the Permit. Columbia Riverkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue. Due to the chronic and persistent nature of Chinook's violations, there is more than a reasonable likelihood of ongoing violations in the future. *See Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 494 U.S. 49, 57 (1987).

The discharges of the Chinook Venture facility constitute "discharges" of "pollutants" from a "point source" under 33 U.S.C. §§ 1362(6), (14), and (16) and present a substantial danger of adversely affected aquatic species (including salmonids), degrading existing aquatic habitat, and threatening human health.

Under Section 309(d) of the CWA, 33 USC § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $32,500 per day for violation days on or before January 12, 2009, and up to $37,500 per day for violation days after January 12, 2009. In addition to civil penalties, Columbia Riverkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover attorney fees and costs, which Columbia Riverkeeper intends to seek.

Columbia Riverkeeper believes that this Notice of Intent to Sue sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Chinook under Section 505(a) of the Clean Water Act for violations described herein.

During the 60-day notice period, Columbia Riverkeeper is available to discuss effective remedies for the violations in this letter and settlement terms. If you wish to discuss any aspect of this notice or to discuss settlement of this matter prior to commencement of suit, please contact the undersigned. We suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed before the end of the 60-day notice period.

We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

*Lauren Goldberg*

Lauren Goldberg
Columbia Riverkeeper
Staff Attorney

**Attachments:**

A: Longview, Washington Precipitation Table
B: Ecology Inspection Report
C: PDF Photos
D: Toxics Table from data Chinook Venture collected in preparing construction stormwater application

**COPIES TO:**

Lisa Jackson
Administrator, US EPA
Ariel Rios Bldg.
1200 Pennsylvania Ave NW
Washington, DC 20460

Michelle Pirzadeh
Acting Regional Administrator
US EPA Region 10
Regional Administrator's Office
1200 Sixth Avenue Suite 900
Seattle, WA 98101

Jay J. Manning
Director
Washington State Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

Notice of Intent to Sue - Page 21 of 22

Jason Oliver
Registered Agent, Chinook Venture, Inc. /dba/ Chinook Venture LV
4029 Industrial Way
P.O. Box 293
Longview, WA 98632

CT Corporation
Registered Agent, Nortwest Alloys, Inc.
1801 West Bay Drive NW
Suite 206
Olympia, WA 98502